```
                    FILED
              U.S. DISTRICT COURT
             DISTRICT OF MARYLAND
    IN THE UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF MARYLAND
              2002 JUL 22  P 2: 39
```

ROBERT A. LOCASTRO, D.O., <u>et ux.</u>       :
                                             CLERKS OFFICE
                                             BALTIMORE
    v.                                  :    Civil No. WMN-02-781
                                             DEPUTY
                                        :
THE PAUL REVERE LIFE INSURANCE          :
    COMPANY, <u>et al.</u>              :


### <u>MEMORANDUM</u>

Before the Court is Plaintiffs' motion to remand this action to the Circuit Court for Baltimore City. Paper No. 17. The motion is fully briefed. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Plaintiffs' motion should be denied.[1]

This action arises out of a disability insurance coverage dispute. Plaintiff, Dr. Robert Locastro, purchased an "own occupation" disability policy from Defendant Paul Revere Life Insurance Company (Paul Revere) in August 1994. Plaintiffs

---

[1] Also pending are several motions to dismiss or for summary judgment filed by various defendants, as well as a motion to strike certain allegations from the Complaint. The briefing of these motions has been stayed pending resolution of the motion to remand. Consistent with the agreement of the parties, Plaintiffs' oppositions to those pending motions will be due within 20 days of the date of this Memorandum and Order. <u>See</u> Paper No. 16. Also pending is a motion for leave to take a deposition without prejudice to Plaintiffs' pending motion for remand. Paper No. 26. That motion will be denied as moot, as the Court will issue with this Memorandum and Order a Scheduling Order that will allow discovery to commence.

allege that, as a result of a series of back injuries, Dr. Locastro was rendered unable to continue to perform his duties as an anesthesiologist and that, as of February 12, 1999, he was placed on medical leave.  Dr. Locastro submitted a claim to Paul Revere under his disability policy which Paul Revere ultimately denied.

According to the Complaint, Paul Revere based its denial on the unsigned report of Dr. John Bianchi, its in-house orthopaedic surgeon.  Plaintiffs complain that Dr. Bianchi never saw or spoke with Dr. Locastro in the process of forming his opinion, never reviewed the medical records forwarded to Paul Revere, and refused to arrange for an independent medical examination.  They also note that Dr. Bianchi's opinion is at odds with the medical conclusions of at least five other physicians, all of whom concluded that Dr. Locastro was totally and permanently disabled and incapable of returning to work as an anesthesiologist.  In sum, Plaintiffs contend that Dr. Bianchi failed to make a "good faith investigation into Dr. Locastro's medical condition before he rendered his written report pronouncing Dr. Locastro fit and able to carry on as an anesthesiologist."  Complaint at ¶ 35.

It is Plaintiffs' further contention that Paul Revere has engaged in a pattern and practice of denying disability claims without justification.  Specifically, they allege that "some time

in or around 1997, Paul Revere and/or Paul Revere Group deliberately, surreptitiously, and intentionally changed its corporate policy regarding payment of disability claims. . . . [T]hat Paul Revere and/or Paul Revere Group and thereafter, Provident, Provident Holding and/or UNUMProvident[2] adopted a specific corporate strategy of denying disability claims or terminating disability claims, not based on the insurers' policies, not based on the medical needs of the insured, and not based upon any legal reason, but solely for the purpose of terminating medical expenses in a demonstration of malice and ill will toward its insureds such as Dr. Locastro." Id. at ¶ 40. Based upon these allegations, Dr. Locastro and his wife, Joan, filed their complaint in the Circuit Court for Baltimore City naming as Defendants: the various insurance companies; Dr. Bianchi; and three individual employees of those companies involved in the handling of Dr. Locastro's claim.

Plaintiffs also named as defendants Joseph Zoimen, in his personal capacity, and Joseph Zoimen, LLC, an entity of which Joseph Zoimen is the sole owner and shareholder (collectively, the Zoimen Defendants). Plaintiffs aver that Dr. Locastro's

---

[2] According to the allegations in the complaint, Defendants Paul Revere and Paul Revere Group were absorbed into Defendants Provident and/or Provident Holdings in February 1997. In July 1999, Provident and Provident Holdings merged with UNUM Corporation to form UNUMProvident Corporation.

purchase of the disability policy from Paul Revere was "in reliance upon the professional advice and assistance of Zoimen, LLC and Zoimen." Id. at ¶ 13.  They also aver that the Zoimen Defendants were well aware of Paul Revere's pattern and practice of unjustifiably denying claims, yet failed to inform Dr. Locastro of those practices.

Defendants removed this action to this Court on the basis of diversity jurisdiction.  At the time that the complaint was filed, Plaintiffs were citizens of the State of Maryland and all Defendants, with the exceptions of the Zoimen Defendants were, for jurisdictional purposes, citizens of other states.  While Defendants acknowledge that the Zoimen Defendants would be considered citizens of the State of Maryland and, thus, ordinarily would destroy complete diversity, they contend that these defendants were "fraudulently joined" in the complaint and should be ignored for the purpose of determining diversity jurisdiction.  Plaintiffs have moved to remand the case back to the state court, arguing that the Zoimen Defendants are proper defendants.

To show fraudulent joinder, the removing party must demonstrate either "outright fraud in the plaintiff's pleading of jurisdictional facts" or that "there is no possibility that the plaintiff would be able to establish a cause of action against

the in-state defendant in state court." Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)(emphasis in original). As there is no allegation that Plaintiffs have fraudulently identified the residency of Mr. Zoimen or Zoimen LLC, the only question before the Court is whether Plaintiffs can establish a cause of action against these defendants.

The Fourth Circuit has stressed that the party alleging fraudulent joinder "bears a heavy burden--it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Hartley v. CSX Transportation, Inc., 187 F.3d 422, 424 (4th Cir. 1999). Further, courts should "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." Id. at 425.

The claims brought against the Zoimen Defendants include: Civil Conspiracy to Commit Breach of Contract (Count One); Civil Conspiracy to Commit Breach of Covenant of Good Faith and Fair Dealing (Count Four); Fraud (Count Six); Civil Conspiracy to Commit Fraud (Count Seven); Intentional Infliction of Emotional Distress (Count Eight); Civil Conspiracy to Commit Intentional Infliction of Emotional Distress (Count Nine); Civil Conspiracy

to Commit Tortious and Negligent Interference with Business Advantage (Court Eleven); Civil Conspiracy to Commit Tortious Breach of Contract (Count Fifteen); Violation of [the Maryland Comsumer Protection Act, the Unfair or Deceptive Trade Practices Act, and the Unfair Claim Settlement Practices Act] (Count Seventeen). Plaintiffs, of course, need only demonstrate the possibility that they can establish a single one of these causes of action.

Despite this highly deferential standard, however, the Court finds that the Complaint fails to present any viable claims against the Zoimen Defendants.

Six of the nine counts brought against the Zoimen Defendants are brought as conspiracy claims: Counts Two, Four, Seven, Nine, Eleven, and Fifteen. Under Maryland law, it is well settled that a corporation cannot conspire with its own employees or agents, who are acting within the scope of their employment or agency. Marmott v. Maryland Lumber Co., 807 F.2d 1180 (4th Cir. 1986), cert. denied, 482 U.S. 929 (1987). As Judge Legg of this Court explained,

> although a corporation is considered a legal entity, it can only act through its agents. Thus, the authorized actions of corporate employees are attributed to the corporation. If [the individual defendants'] behavior was authorized by [the corporate defendant], as plaintiff alleges, their actions constitute corporate action and no conspiracy could

6

exist.

Evans v. United States Fidelity & Guar. Co., Civil Action No. L-95-2318, 1996 WL 560195 (D. Md. February 16, 1996).

Plaintiffs state in the Complaint, without qualification, that "Zoimen, LLC is (was) an insurance agent of Paul Revere, Paul Revere Group, Provident, Provident Holding and/or UNUMProvident" and that Joseph Zoimen "[a]t all times relevant hereto was acting within the scope of his authority at Zoimen, LLC as well as within the scope of his authority at Paul Revere, Paul Revere Group, Provident, Provident Holding and/or UNUMProvident." Complaint at ¶¶ 11, 12. To avoid the consequence of these allegations, Plaintiffs' primary response is that Defendants should be estopped from arguing that the Zoimen Defendants are their agents because Paul Revere has previously argued, in a completely unrelated Montana state court action, that an insurance agent that sold a Paul Revere disability policy was not acting as its agent when she recommended the policy and collected premiums. Reply at 8 (citing Marie Deonier & Assoc. v. Paul Revere Life Insur. Co., 9 P.3d 622 (Mont. 2000)).

Arguments that Paul Revere may have made about the status of some other individual, however, have no binding effect here. The Court notes that in Deonier, the Court specifically found that Deonier was an "independent agent" and "did not have an exclusive

relationship with any disability insurance carrier." 9 P.3d at 623. Plaintiffs make no such allegations in their complaint. To the contrary, Plaintiffs contend that at all times relevant, the Zoimen Defendants acted within the scope of the agency relationship they had with the Defendant Insurance Companies. See, Good v. Prudential Ins. Co. of Amer., 5 F.Supp.2d 804 (N.D. Cal. 1998)(holding that, where plaintiff alleged that insurance agent who sold him an insurance policy was agent of insurance company and was acting within the scope of such agency, agent was fraudulently joined).[3]

Neither can the Complaint support any of the three non-conspiracy claims. As to Plaintiffs' fraud claim, under both federal and Maryland law, the circumstances constituting fraud must be alleged with particularity. See Fed. R. Civ. P. 9(b); Brack v. Evans, 230 Md. 548, 553 (1963). That particularity must include the "time, place, and nature" of the alleged misrepresentation. Lasercomb America, Inc. v. Reynolds, 911 F.2d 970, 980 (4th Cir. 1990). From the allegations in Plaintiffs' fraud count, it would appear that the misrepresentation that forms the basis of the fraud claim is that "Paul Revere and Paul

---

[3] In their briefs, Plaintiffs allude to the possibility that the Zoimen Defendants may have been independent agents or brokers or, that they may have been acting ultra vires. These claims are directly at odds with Plaintiffs' allegations in the Complaint and thus, will not be considered.

Revere Group informed [Dr. Locastro] that if he were to make a disability claim in the future that all of his medical records would be independently reviewed by a physician of its own choosing." Complaint at ¶ 83. Noticeably absent from the complaint, however, is any allegation as to specifically when, or by whom, this misrepresentation was made.

While it may seem a trifling point to require that Plaintiffs allege the specific source of the alleged misrepresentation, the reasons for this requirement are well-founded: "(1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect the defendant from harm to his or her reputation or good will, and (3) to reduce the number of strike suits." Gollomp v. MNC Financial, Inc., 756 F.Supp. 228, 232 (D. Md. 1991). The Court notes that this is not a situation where discovery would be required to provide that specificity. As Plaintiffs allege that Dr. Locasto relied on this misrepresentation when he purchased the disability policy, he should have been able to declare when, where, and by whom, this misrepresentation was made.

Turning to Plaintiffs' "Intentional Infliction of Emotional Distress" claim, the Court also finds Plaintiffs' allegations wanting. In Maryland, the tort of intentional infliction of emotional distress requires, <u>inter alia</u>, proof of "extreme and

9

outrageous" conduct by the defendant, and conduct will be found to rise to that level only if it "go[es] beyond all possible bounds of decency, and [is] to be regarded as atrocious, and utterly intolerable in a civilized community." Harris v. Jones, 281 Md. 560, 566 (1977). While not to diminish the emotional impact a wrongful denial of insurance benefits might have on an insured, the Court cannot conclude that the facts alleged here rise to the level of outrageousness required under Maryland law for this very narrowly defined tort. See, Dickson v. Selected Risk Ins. Co., 666 F.Supp. 80, 81 (D. Md. 1987)(dismissing as "frivolous" claim for intentional infliction of emotional distress based on alleged "bad-faith" denial of insurance coverage).

Finally, the Court finds that Plaintiffs cannot establish a claim for "Violation of Statutes." Plaintiffs allege that Defendants' acts violated "the Maryland Consumer's Protection Act (Md. Code Ann., Com. Law II § 13-101 et seq.), the Unfair or Deceptive Trade Practices Act (Md. Code Ann., Com. Law II § 13-301 et seq.), and/or the Unfair Claim Settlement Practices Act (Md. Code Ann., Ins. § 27-301 et seq.)." As Defendants observe, Title 13 of the Commercial Law Article does not apply to insurance, see, Md. Code Ann., Com. Law II § 13-104(1), and § 27-301 et seq. applies only to "an insurer or nonprofit health

service plan." See Md. Ann. Code, Ins. § 27-304. In addition, there is no private right of action under § 27-304. See Alexander & Alexander, Inc. v. B. Dixon Evander & Associates, Inc., 88 Md. App. 672, 700 n.8 (1991). Plaintiffs in their pleadings raise no argument to the contrary.

For these reasons, the Court finds that the Zoimen Defendants have been "fraudulently joined," and that their presence in this action should be ignored for the purpose of determining the jurisdiction of this Court. As there is complete diversity once the Zoimen Defendants are no longer considered, Plaintiffs' motion for remand must be denied. A separate order consistent with this memorandum will issue.

_____
William M. Nickerson
United States District Judge

Dated: July 22, 2002

11