<div align="center">

**Joel N. Morse, Ph.D.**
**Financial Economist**

</div>

July 5, 2003

Mr. Randall F. Smouse
Owens & Smouse
113 Old Padonia Rd.
Suite 100
Hunt Valley, MD 21030

Dear Mr. Smouse:

<u>RE: **Locastro v Paul Revere Life Insurance Company**    Present
Value of $6250 per month, net of premia and dues paid</u>

<u>BACKGROUND</u>

You have asked me to estimate the present value of the monthly
payments, premia and dues due Mr. Locastro. This letter is my
response to your request.

I am a tenured full professor of finance at the University of
Baltimore, which is a unit of the University System of Maryland.

I have reviewed following information:

1)    Complaint and various answers to interrogatories.
2)    Correspondence from you.
3)    Contract for disability insurance.
4)    Correspondence from Paul Revere Life Insurance to Mr.
      Locastro.
5)    Copies of checks paid for premia for disability insurance.


SUMMARY OF DAMAGES

In my opinion, the present value of $6250 per year to age 65 is
$922,290.  To this I add the present value (i.e., historical

---

<div align="center">

**4 West University Parkway • Baltimore, MD 21218**
**410-243-6033 • 410-235-6884 FAX**
email: jnmorse@verizon.net
**University Home Page http://home.ubalt.edu/ntsbmors/jmorse.html**

</div>



EXHIBIT
1

payments from May 12, 1999 through July 12, 2003, including lost interest on those amounts) of 51 past monthly payments of $6250 due, which is $329,529. Next, I add $10,736, which represents the total policy premia paid between 1999 and now by Dr. Locastro. I also add $3000, which according to counsel, represents dues which would not have been paid if Dr. Locastro had been deemed disabled. Finally, I estimate that the interest due (also known as opportunity cost) on the policy premia and dues paid is $472. The sum total is **$1,266,027**.

I have also been asked to estimate the undiscounted value of all these items of damages. In other words, were I to delete the effects of the interest rate both before and after the date of this report, my total would be **$1,644,986.**

Note that by "present value," I mean a lump sum, which if invested, will replace the future year-by-year stream of economic losses. In other words, it is an amount that recognizes that investing a lump sum of money generates income during the years prior to each future year's loss.

If a reader questioned the applicability of the present value concept, because she raised the possibility of premature death, I note that Dr. Locastro will likely live well beyond age 65. His life expectancy (see table below) is to age 77.55.

OTHER ECONOMIC PARAMETERS RELIED UPON

In brief, I state several background items:

| | |
|---|---|
| Discount rate, (to obtain present value) | 4.05%, from Federal Reserve Board (www.federalreserve.gov/releases/h15/update/) The download occurred on 7/3/03. I interpolated between the 10-year and the 20-year U.S. government bond rate. |
| Interest rate- (to obtain pre-judgment interest due, if any) | 1.66%--same source as above |
| Life expectancy | For a white male, such as Dr. Locastro, age 47.5 at this date, the normal life expectancy is approximately 30.05, to age 77.55. My source is the 2001 Statistical Abstract of the United States, |

| | which relies on the U.S. National Center for Health Statistics, *Vital Statistics of the United States.* |
|---|---|

I consider this report to be preliminary, in the sense that you may find errors of fact to be corrected, or new and relevant information may be provided to me. I am ready to answer further questions, if asked.


Sincerely,


Joel N. Morse


ENC
*Curriculum Vitae*
Testimony history and billing rates

JUL - 7 2003

RFS:rce
7/7/03
128.0000

<div align="center">

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

</div>

ROBERT A. LOCASTRO, D.O., et ux.,     *

      Plaintiffs               *

                                *

v.                                 *

                                *    Civil Action No.: 1:02-cv-00781

THE PAUL REVERE LIFE
INSURANCE COMPANY, et al.,     *

                                *

      Defendants          *

<div align="center">

*  *  *  *  *  *  *  *  *

<u>DISCLOSURE OF EXPERT TESTIMONY</u>

</div>

Plaintiffs, Robert A. Locastro, D.O. and Joan Locastro, by their attorneys, Randall F. Smouse, William H. Owens and the law offices of Owens & Smouse, pursuant to Federal Rule of Civil Procedure 26(a)(2) and Local Rule 104.10, hereby disclose and identify the following expert witnesses:

1.     The following witnesses have been retained by Plaintiffs as expert witnesses in this case:

       a.    Frank Caliri, III
            7658 Greenleaf Avenue
            Whittier, California 90602
            (Disability Insurance Coverage)

       b.    Joel N. Morse, Ph.D.
            Merrick School of Business
            University of Baltimore
            1420 N. Charles Street
            Baltimore, Maryland 21201-4989
            (Financial Economics)



EXHIBIT
2

c.   Lianne Friedman
     Rehabilitation Experts of Maryland, Inc.
     11160 Viers Mill Road
     Suite 708
     Wheaton, Maryland 20902
     (Vocational Rehabilitation Counseling)

A copy of the reports of each of the above experts is attached hereto.

2.   In addition, Plaintiffs identify the following hybrid fact/expert witnesses, including treating physicians and other healthcare providers, as follows:

a.   Henry R. Herbert, M.D, certified occupational medicine specialist, 12255 Fair Oaks Parkway, Fairfax, Virginia, 22033, 203-934-5803

b.   William C. Lauerman, M.D., certified orthopaedic surgeon, Chief of Spinal Surgery, Georgetown University Hospital, Physicians Health Care Center, Department of Orthopaedic Surgery, 3800 Reservoir Road NW, Washington, D.C. 20007-2197, 202-687-8766

c.   Richard J. Sternberg, M.D., certified orthopaedic surgeon, Kaiser Permanente Penderbrook Medical Center, 12011 Lee-Jackson Memorial Highway, Fairfax, Virginia 22033, 703-383-5400

d.   Kenneth Jackson, M.D., certified orthopaedic surgeon, Kaiser Permanente Penderbrook Medical Center, 12011 Lee-Jackson Memorial Highway, Fairfax, Virginia 22033, 703-383-5400

e.   Christopher Spevak, M.D., pain management specialist, Kaiser Permanente Falls Church Medical Center, 201 North Washington Street, Falls Church, Virginia 22046, 703-531-1687

f.   Karen S. Melcher, physical therapist, Kaiser Permanente, 10410 North Kensington Parkway, Kensington, Maryland 20895, 301-897-2330

g.   Janet L. Alcorn, physical therapist, Kaiser Permanente, 10410 North Kensington Parkway, Kensington, Maryland 20895, 301-897-2330

h.   Cindy S. Hicks, physical therapy assistant, Kaiser Permanente, 10410 North Kensington Parkway, Kensington, Maryland 20895, 301-897-2330

i.   Hunter E. Robinson, physical therapy assistant, Kaiser Permanente, 10410 North Kensington Parkway, Kensington, Maryland 20895, 301-897-2330

j.   Katina N. Morgan, physical therapist, Kaiser Permanente Falls Church Medical Center, 201 North Washington Street, Falls Church, Virginia 22046, 703-531-1687

k.   Kelly Queen, physical therapy assistant, Kaiser Permanente, 10410 North Kensington Parkway, Kensington, Maryland 20895, 301-897-2330

l.   Robert G. Loeffler, M.D., certified orthopaedic surgeon, 2101 Medical Park Drive, suite 110, Silver Spring, Maryland 20902, 302-681-5400

m.   Christopher Curcio, M.D., radiologist, Kaiser Permanente Imaging Center, 8261 Willow Oak Corporate Drive, Fairfax, Virginia, 22031, 703-205-3600

n.   Bergit I. Schoellmann, M.D., radiologist, Kaiser Permanente Falls Church Medical Center, 201 North Washington Street, Falls Church, Virginia 22046, 703-531-1687

o.   Leora Sachs, M.D., radiologist, Kaiser Permanente Falls Church Medical Center, 201 North Washington Street, Falls Church, Virginia 22046, 703-531-1687

p.   Steven L. Taub, M.D., physiatrist (physical medicine and rehabilitation), Kaiser Permanente Kensington Medical Center, 10810 Connecticut Avenue, Kensington, Maryland 20895, 301-929-7100

q.   Isis Hannallah, M.D., radiologist, Kaiser Permanente Medical Center, 10810 Connecticut Avenue, Kensington, Maryland 20895, 301-929-7100

r.   Dominique L. Vinh, M.D., physiatrist (physical medicine and rehabilitation) as well as spinal cord and injury medicine specialist, Kaiser Permanente Medical Group, Springfield Medical Center, 6501 Loisdale Court, Springfield, Virginia 22150-1885, 703-922-1000

s.   Ivan Gorelik, M.D., radiologist, Kaiser Permanente Medical Center, 10810 Connecticut Avenue, Kensington, Maryland 20895, 301-929-7100

t.      Marta Archutowska, M.D., radiologist, Kaiser Permanente Imaging Center, 8261 Willow Oak Corporate Drive, Fairfax, Virginia, 22031, 703-205-3600

u.      Jonathon DesMarteau, anesthesiologist, Kaiser Permanente Falls Church Medical Center, 201 North Washington Street, Falls Church, Virginia 22046, 703-531-1687

v.      Barbara Faires Burkett, D.O., osteopath, 11000 New Hampshire Avenue, Silver Spring, Maryland 20904, 301-681-4277

w.      Joseph Zoimen, insurance salesman, 17 Warren Road, Suite 5B, Baltimore, Maryland 21208

x.      Margaret M. O'Hara, disability insurance claims analyst, 10 Inman Avenue, Worcester, Massachusetts

y.      Shelley A. McKiernan, disability insurance claims analyst, Paul Revere Life Insurance Company, 18 Chester Street, Worcester, Massachusetts 01608

z.      Judy LaRochelle, disability insurance claims analyst, Paul Revere Life Insurance Company, 18 Chester Street, Worcester, Massachusetts 01608

aa.     John Bianchi, M.D., physician, 74 South Quinigamond Avenue, Shrewsbury, Massachusetts 01545

bb.     Kirstin Ellia, disability insurance claims analyst, Paul Revere Life Insurance Company, 18 Chester Street, Worcester, Massachusetts 01608

cc.     John Butler, disability insurance claims analyst, Paul Revere Life Insurance Company, 18 Chester Street, Worcester, Massachusetts 01608

dd.     John Lotfus, disability insurance claims analyst, Paul Revere Life Insurance Company, 18 Chester Street, Worcester, Massachusetts 01608

ee.     Mr. Ryan, disability insurance claims analyst, Paul Revere Life Insurance Company, 18 Chester Street, Worcester, Massachusetts 01608

ff.     Tina M. Pomerleau, insurance claims analyst and IA coordinator, UnumProvident Corporation, 2211 Congress Street-C433, Portland, Maine 04122, 207-575-2211

gg.     Sharon Elliott, disability insurance claims analyst and vocational rehabilitation specialist, Paul Revere Life Insurance Company, 18 Chester Street, Worcester, Massachusetts 01608

Law Offices
OWENS & SMOUSE, LLC
113 Old Padonia Road
Suite 100
Hunt Valley, Maryland 21030

hh.   Richard E. Grant, M.D., joint specialist, Providence Hospital, DePaul Building, 1160 Varnum Street, NE, Suite 104, Washington, D.C. 20017, 202-269-7383

ii.   Michelle Magner, disability insurance claims analyst, Paul Revere Life Insurance Company, 18 Chester Street, Worcester, Massachusetts 01608

jj.   Christopher Powers, disability insurance benefits analyst, Standard Insurance Company, Long Term Disability Department, 900 S.W. 5th Avenue, Portland, Oregon 97204-1235, 503-321-6395

kk.   Marion Waterman, R.N., B.S.N., C.C.M., nurse case manager, Standard Insurance Company, Claim Management Resources, P.O. Box 2800, Portland, Oregon 97208, 800-368-2859

ll.   Micah Rubenstein, disability benefits analyst, Standard Insurance Company, Group Benefits Department, 1100 S.W. 6th Avenue, Portland, Oregon 97204-1093, 800-638-1135

mm.   Layton D. Holcombe, insurance claims support specialist, Independent Consulting Group Inc., 3640 Richmond Drive, Colorado Springs, Colorado 80922, 800-706-7056

nn.   Tricia A. Berube, disability insurance claims analyst, UnumProvident, 18 Chester Street, Worcester, Massachusetts 01608

oo.   Charmaine Sheeler, insurance investigator, Maryland Insurance Administration, 525 St. Paul Place, Baltimore, Maryland 21202-2272, 410-628-2000

pp.   Suzanne Balodajan, insurance investigator, Maryland Insurance Administration, 525 St. Paul Place, Baltimore, Maryland 21202-2272, 410-628-2000

qq.   Lynda Miller, insurance investigator, Maryland Insurance Administration, 525 St. Paul Place, Baltimore, Maryland 21202-2272, 410-628-2000

rr.   Joy Hatchette, insurance investigator, Maryland Insurance Administration, Associate Commissioner, 525 St. Paul Place, Baltimore, Maryland 21202-2272, 410-628-2000

ss.   Dorothy Hall, disability insurance claims analyst, Social Security Administration, Disability Determination Services, 1500 Woodlawn Drive, Baltimore, Maryland 21241-1500

tt.   D. M. Smith, disability insurance claims analyst, Social Security Administration, Disability Determination Services, 1500 Woodlawn Drive, Baltimore, Maryland 21241-1500

uu.   Samantha Kieley, M.A., CRC, CDMS, CCM, vocational rehabilitation specialist, First Rehabilitation Resources Inc., 14504 Greenview Drive, Suite 506, Laurel, Maryland 20708, 410-792-0506

vv.   Linda J. Fasshauer, ALHC, ACS, disability insurance claims analyst and complaint specialist, Paul Revere Life Insurance Company, 18 Chester Street, Worcester, Massachusetts 01608, 888-226-7959 ext. 6742

Pursuant to Local Rule 104.10, no 26(a)(2)(B) reports are required for the above hybrid fact/expert witnesses.

Respectfully submitted,

RANDALL F. SMOUSE
Federal Bar No.: 11784

WILLIAM H. OWENS
Federal Bar No.: 06066

Owens & Smouse, LLC
113 Old Padonia Road, Suite 100
Hunt Valley, Maryland 21030
410-453-5757
Attorneys for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2 day of July, 2003, a copy of the foregoing Disclosure of Expert Testimony was hand delivered to:

Bryan D. Bolton, Esquire
Funk & Bolton, P.A.
Twelfth Floor
36 South Charles Street
Baltimore, Maryland 21201-3111
Fax No.: 410-659-7773
Attorneys for all Defendants

RANDALL F. SMOUSE

**FUNK & BOLTON**

A PROFESSIONAL ASSOCIATION

ATTORNEYS AT LAW

TWELFTH FLOOR

36 SOUTH CHARLES STREET

BALTIMORE, MARYLAND 21201-3111

(410) 659-7700

FACSIMILE (410) 659-7773

DAVID M. FUNK
BRYAN D. BOLTON
BRYSON F. POPHAM
REN L. TUNDERMANN
DEREK B. YARMIS
CHARLES D. MACLEOD
JEFFERSON L. BLOMQUIST
LINDSEY A. RADER

HUGH M. BERNSTEIN
JAMES F. TAYLOR
PETER C. ISMAY
CHERYL A. C. BROWN
HISHAM M. AMIN
COLIN BELL

OF COUNSEL
JOHN A. ANDRYSZAK
GARY C. HARRIGER
MICHAEL R. MCCANN
STEPHEN Z. MEEHAN
J. FRANK NAYDEN
DEBORAH R. RIVKIN
JOHN R. STIERHOFF

Writer's Direct Dial: 410-659-7762
dyarmis@fblaw.com

July 10, 2003

William H. Owens, Esquire
Owens & Smouse, LLC
113 Old Padonia Road, Suite 100
Hunt Valley, Maryland 21030

<u>Via Facsimile
and U.S. Mail</u>

Re:    *Locastro v. The Paul Revere Life Insurance Company, et al.*

Dear Bill:

Receipt of Dr. Locastro's Disclosure of Expert Testimony is acknowledged. Dr. Locastro has identified 51 individuals as expert witnesses, 48 of whom purportedly are "hybrid fact/expert witnesses." With the exception of the individuals identified in paragraphs 2.a. through 2.v., whom we understand are former or present treating health-care providers, Dr. Locastro does not have any legitimate basis for identifying the remaining individuals as hybrid fact/expert witnesses.

The remaining individuals (at paragraphs w through vv) include Dr. Locastro's insurance broker, various former or present employees of one or more of the Defendants, various former or present employees of Standard Insurance Company, various former or present employees of the Maryland Insurance Administration, various former or present employees of the Social Security Administration, and Dr. Richard Grant, whom, to our knowledge, has never examined or treated Dr. Locastro. Although some of these witnesses certainly have personal knowledge of facts relevant to the issues in this case, Defendants do not believe that Dr. Locastro has any intention of eliciting expert opinion testimony. In fact, it appears that Dr. Locastro has included those witnesses in the expert disclosure for the sole purpose of circumventing the twelve-hour limitation on deposition hours prescribed in the Court's scheduling order. Indeed, on July 2, 2003, Mr. Smouse advised Bryan Bolton that he intends to conduct full-day depositions of John Bianchi, M.D., Margaret O'Hara, Shelly McKiernan, and Judy LaRochelle. The length of those depositions alone will far exceed the twelve-hour limitation.

EXHIBIT

3

**FUNK & BOLTON**
A PROFESSIONAL ASSOCIATION

William H. Owens, Esquire
July 10, 2003
Page 2

Please contact me as soon as possible to advise whether Dr. Locastro intends to take the position that the twelve-hour limitation on deposition hours does not apply with respect to the individuals identified at paragraphs w through vv. If Dr. Locastro intends to take that position, then we will have no alternative but to bring this matter to the Court's attention.

I look forward to hearing from you.

Sincerely,

Derek B. Yarmis

20014.015:65395

LAW OFFICES OF

# O W E N S  &  S M O U S E

A Limited Liability Corporation

## FACSIMILE TRANSMISSION COVER SHEET

**Date:  Mr. Mr. July 10, 2003**          **Time:** 5:45 pm

**TO:**          Bryan D. Bolton, Esquire

**FAX NO.:**   410 659 7773

**FROM:**      Randall F. Smouse, Esquire

**RE:**
          **Case Name:**   Locastro, et al. v. The Paul Revere Life Insurance Company, et al.
          **Our File No.:** 128.0000

**Description of Document Being Sent:**
          Plaintiff Robert Locastro, D.O., 2d Request for Production of Documents

**Number of Pages Being Sent (including this cover sheet):** 16

**Comments:**
          Hard copy will follow.  Mr. Yarmis' fax letter of moments ago is misguided.  We mutually agreed on
          50 deposition hours per side at the inception of this case and advised the court of that agreement in
          writing on August 5, 2002.  We will gladly address your concerns with the court as Mr. Yarmis
          expresses.  There is absolutely no attempt by Plaintiffs to circumvent any rights you enjoy
          regarding depostion hours.
          Randall F. Smouse

### CONFIDENTIALITY NOTICE

**"WARNING:       Unauthorized interception of this telephonic communication could be a violation of Federal and
          Maryland Law."**
The documents accompanying this telecopy transmission contain confidential information belonging to the sender which is legally privileged.  The information is
intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying,
distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited.  If you have received this telecopy in error,
please immediately notify us by telephone to arrange for the return of the original documents to us.
**Any questions/problems with transmission/quality of copy rec'd, call 410-453-5757.**



EXHIBIT
4

113 OLD PADONIA ROAD • SUITE 100
HUNT VALLEY, MARYLAND 21030
TELEPHONE: 410-453-5757
www.owens-smouse.com                                    FAX: 410-453-5755

Suburban D.C. Office
9911 Georgia Avenue
Silver Spring, Maryland 20902

# FUNK & BOLTON

### A PROFESSIONAL ASSOCIATION
### ATTORNEYS AT LAW
### TWELFTH FLOOR
### 36 SOUTH CHARLES STREET
### BALTIMORE, MARYLAND 21201-3111
### (410) 659-7700
### FACSIMILE (410) 659-7773

DAVID M. FUNK
BRYAN D. BOLTON
BRYSON F. POPHAM
REN L. TUNDERMANN
DEREK B. YARMIS
CHARLES D. MacLEOD
JEFFERSON L. BLOMQUIST
LINDSEY A. RADER

HUGH M. BERNSTEIN
JAMES F. TAYLOR
PETER C. ISMAY
CHERYL A. C. BROWN
HISHAM M. AMIN
COLIN BELL

OF COUNSEL
JOHN A. ANDRYSZAK
GARY C. HARRIGER
MICHAEL R. McCANN
STEPHEN Z. MEEHAN
J. FRANK NAYDEN
DEBORAH R. RIVKIN
JOHN R. STIERHOFF

Writer's Direct Dial: 410-659-7762
dyarmis@fblaw.com

July 14, 2003

William H. Owens, Esquire
Owens & Smouse, LLC
113 Old Padonia Road, Suite 100
Hunt Valley, Maryland  21030

Via Facsimile
and U.S. Mail

   Re:  *Locastro v. The Paul Revere Life Insurance Company, et al.*

Dear Bill:

   Thank you for your July 11, 2003 telephone call in response to my July 10, 2003 letter. As we discussed, after the first scheduling order was issued, the parties agreed to jointly request 50 deposition hours per side. That request was included in your August 5, 2002 letter to Judge Nickerson. Judge Nickerson, however, withdrew the scheduling order shortly thereafter.

   The second scheduling order issued by Judge Nickerson required the parties to report by May 20, 2003 on the number of deposition hours believed to be appropriate. Judge Nickerson advised that, if he did not hear from the parties by that date, then "each side shall be limited to 12 hours of depositions of fact witnesses (including parties)." Neither plaintiffs nor defendants requested an enlargement of deposition hours. For this reason, the 12 hour limitation set forth in the second scheduling order, not the 50 hour limitation proposed in your August 5, 2002 letter to Judge Nickerson, is controlling.

   Defendants' initial agreement to jointly request 50 deposition hours is no longer controlling for an additional reason. When we agreed to jointly request 50 deposition hours, the Court had not yet ruled on the pending motions to dismiss. The Court since has ruled on the motions, and various counts and defendants have been dismissed. The issues on which discovery is needed, therefore, has been narrowed somewhat.



EXHIBIT
5

**FUNK & BOLTON**

A PROFESSIONAL ASSOCIATION

William H. Owens, Esquire
July 14, 2003
Page 2

That being said, defendants will agree to join in a request that the Court allow 50 hours of depositions of fact witnesses (including parties) per side on two conditions. First, plaintiffs agree that all individuals identified in their expert disclosure as hybrid fact/expert witnesses will be deemed fact witnesses for purposes of deposition hours. Second, plaintiffs agree to join in a request to modify the scheduling order as follows:

| Deadline | Date |
|---|---|
| Defendants' Rule 26(a)(2) expert disclosures | September 4, 2003 |
| Plaintiffs' rebuttal Rule 26(a)(2) expert disclosures | September 18, 2003 |
| Rule 26(e)(2) supplementation of Disclosures and responses | October 24, 2003 |
| Discovery deadline; Submission of status report | November 18, 2003 |
| Requests for admission | November 25, 2003 |
| Dispositive pretrial motions deadline | December 19, 2003 |

I trust you will find this proposal acceptable so that we can avoid burdening the Court with a discovery motion. I will contact you later today to discuss this matter.

Sincerely,

Derek B. Yarmis

20014.015:65433

LAW OFFICES OF

# OWENS & SMOUSE

A Limited Liability Corporation

July 14, 2003

<u>By Way of U.S. Mail and Fax</u>
Bryan D. Bolton, Esquire
Funk & Bolton, P.A.
Twelfth Floor
36 South Charles Street
Baltimore, Maryland 21201-3111
Fax No.:  410-659-7773

               RE:    *Locastro, et al. v The Paul Revere Life Insurance Company, et al.*
                     Civil Action No.:  WMN 02-781

Dear Brian:

    I write in response to your partner, Derek Yarmis' letter of July 10, 2003 and my telephone conversation with Mr. Yarmis the following day, July 11, 2003.   During our conversation, Mr. Yarmis advised that it is Defendants' position that, while we had previously agreed to fifty hours per side of deposition time, said agreement has been superceded by the new Scheduling Order which allots twelve hours of time, per side, for deposing fact witnesses.  Mr. Yarmis suggested that Defendants might be willing to reinstate the fifty hour per side deposition limit, if we would be willing to agree to an extension of both the expert disclosure deadline and the discovery deadline.

    Having discussed these possibilities with my partner, Randy Smouse and with our client, I write to address these matters on behalf of Plaintiffs.  First, I assure that there is no effort to misclassify fact witnesses as hybrid witnesses in order to evade deposition time limits; we were instead simply being particularly inclusive, in the event that expert opinion testimony need be sought from one of the witnesses listed in our disclosure as " hybrid."  In fact, we reserve the right to take the same position that you took in Mr. Yarmis' July 10, 2003 letter, namely, that the depositions of any of the hybrid witnesses, particularly to the extent that factual testimony is being sought, should count against the deposing parties' hourly limitation.

    Second, as Dr. Locastro and his family have gone through many years without receipt of their expected disability payments, we are unable to obtain our clients' permission to either extend the discovery deadline or to extend the deadline for Defendants to disclose expert testimony.

<div style="text-align:center; border:3px solid black; display:inline-block;">
EXHIBIT

6
</div>

William H. Owens
whowens@owens-smouse.com
www.owens-smouse.com

113 OLD PADONIA ROAD • SUITE 100
HUNT VALLEY, MARYLAND 21030
TELEPHONE: 410-453-5757
FAX: 410-453-5755

Suburban D.C. Office
9911 Georgia Avenue
Silver Spring, Maryland 20902

Bryan D. Bolton, Esquire
July 14, 2003
Page 2 of 2

Third, we will simply accept your position that both sides are limited to twelve total hours for deposing all fact witnesses. Obviously, we have, at most, made a simple clerical error in presuming that our original fifty hours agreement was in effect. While the Court might still be willing to modify the time limit, even at this late date, under present circumstances, we believe that the interests of justice and the parties are best served by simply agreeing to the twelve hour limit which you and Mr. Yarmis favor. Among other things, the twelve hour limitation will lead to more expeditious and fine-tuned discovery, and perhaps ultimately to a shorter and more easily managed trial.

As a result of the above, I believe that we are now fully in agreement regarding these various discovery matters. As always, please feel free to call me if you believe that further discussion is warranted. In the meantime, one immediate dividend of the twelve-hour limitation is that we need only plan two days of depositions in Massachusetts. If you can arrange it, I suggest that we simply agree to take one witness after the other over the course of a mutually agreeable two-day span. I thank you for your efforts to arrange these depositions, and I hope that in halving the time period we made your job a little easier.

Please advise me at your next convenience regarding your plans for Dr. Locastro's I.M.E. and the above deposition dates. I thank you and Mr. Yarmis for your courtesy and attention to this matter, and I remain,

Very Truly Yours,

WILLIAM H. OWENS

WHO:rcc
Copy to:     Derek Yarmis, Esquire, By Way of U.S. Mail and Fax  410-659-7773

LAW OFFICES OF

# OWENS & SMOUSE

A Limited Liability Corporation

July 14, 2003

**By Way of U.S. Mail and Fax**
Bryan D. Bolton, Esquire
Derek B. Yarmis, Esquire
Funk & Bolton, P.A.
Twelfth Floor
36 South Charles Street
Baltimore, Maryland  21201-3111
Fax No.:  410-659-7773

RE:    *Locastro, et al. v The Paul Revere Life Insurance Company, et al.*
Civil Action No.:  WMN 02-781

Dear Mr. Bolton and Mr. Yarmis:

I write in response to your fax letter of July 14, 2003 and my telephone conversation with Derek Yarmis this morning.  As you know from my earlier correspondence this morning, we cannot agree to modify the discovery schedule as suggested in your most recent letter.  Also, while Plaintiffs reserve the right to seek additional deposition hours for fact witnesses, we do not intend to do so at this time. In other words, we will endeavor to depose all of Defendants' fact and hybrid witnesses within the current twelve hour period.

Per my telephone conversation with Mr. Yarmis today, I expect that the Defendants will taking the position that the twelve hour time limit applies to all fact and hybrid witnesses, including healthcare providers.  Obviously, if Defendants take the position that healthcare providers are not included within the limitation, then Plaintiffs will likely seek to exclude other hybrid witnesses from the limitation.  Accordingly, please notify me at your earliest convenience if you intend to take such a position.

**EXHIBIT**

**7**

William H. Owens
whowens@owens-smouse.com
www.owens-smouse.com

113 OLD PADONIA ROAD • SUITE 100
HUNT VALLEY, MARYLAND 21030
TELEPHONE: 410-453-5757
FAX: 410-453-5755

Suburban D.C. Office
9911 Georgia Avenue
Silver Spring, Maryland 20902

Bryan D. Bolton, Esquire
July 14, 2003
Page 2 of 2


     Also, I confirm that Dr. Locastro's I.M.E. is scheduled for July 30, 2003 at 11:30 a.m., at Provident Hospital with Dr. Grant. Unless I notify you otherwise, Dr. Locastro will attend same at that date, time and location.


     Finally, please advise me of the expected deposition dates for the witnesses previously discussed. I thank you for your attention to this matter, and I remain


               Very truly yours,

               WILLIAM H. OWENS


WHO:rcc
Copy to:     Dr. Robert Locastro

# FUNK & BOLTON

A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW
TWELFTH FLOOR
36 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201-3111
(410) 659-7700
FACSIMILE (410) 659-7773

DAVID M. FUNK
BRYAN D. BOLTON
BRYSON F. POPHAM
REN L. TUNDERMANN
DEREK B. YARMIS
CHARLES D. MacLEOD
JEFFERSON L. BLOMQUIST
LINDSEY A. RADER

HUGH M. BERNSTEIN
JAMES F. TAYLOR
PETER C. ISMAY
CHERYL A. C. BROWN
HISHAM M. AMIN
COLIN BELL

OF COUNSEL
JOHN A. ANDRYSZAK
GARY C. HARRIGER
MICHAEL R. McCANN
STEPHEN Z. MEEHAN
J. FRANK NAYDEN
DEBORAH R. RIVKIN
JOHN R. STIERHOFF

Writer's Direct Dial:  410-659-7762
dyarmis@fblaw.com

July 15, 2003

William H. Owens, Esquire
Owens & Smouse, LLC
113 Old Padonia Road, Suite 100
Hunt Valley, Maryland  21030

Via Facsimile
and U.S. Mail

Re:    *Locastro v. The Paul Revere Life Insurance Company, et al.*

Dear Bill:

Receipt of your July 14, 2003 letter to Bryan Bolton and me is acknowledged.  We do not agree that the depositions of Dr. Locastro's treating health-care providers should count toward the deposition hours allocated by the Court.

In the scheduling order, the Court made clear that deposition hours apply only to fact witnesses.  Dr. Locastro designated his treating health-care providers as expert witnesses; therefore, any time you or we spend taking their depositions should not count toward the twelve-hour limit.  Of course, if there are any health-care providers from whom you do not intend to elicit expert opinion testimony at trial, such as Dr. Locastro's physical therapists, for example, then any time spent taking their deposition should count toward the twelve-hour limitation.  If, however, you intend to seek expert opinion testimony (for example, testimony concerning the nature of Dr. Locastro's alleged disabling condition and the extent of his alleged disability), the twelve-hour limitation is inapplicable.

We understand that, based on our position, you may seek to exclude other individuals identified by Plaintiffs as hybrid witnesses from the twelve-hour limitation.  Please contact me as soon as possible to advise whether you believe any such witnesses should be excluded so that we can give consideration to the issue and, hopefully, avoid burdening the Court with a discovery motion.



EXHIBIT
8

**FUNK & BOLTON**

A PROFESSIONAL ASSOCIATION

William H. Owens, Esquire
July 15, 2003
Page 2

I look forward to hearing from you.

Sincerely,

Derek B. Yarmis

20014.015:65477

LAW OFFICES OF

# OWENS & SMOUSE

A Limited Liability Corporation

July 17, 2003

<u>By Way of U.S. Mail and Fax</u>
Derek B. Yarmis, Esquire
Funk & Bolton, P.A.
Twelfth Floor
36 South Charles Street
Baltimore, Maryland 21201-3111
Fax No.: 410-659-7773

RE:  *Locastro, et al. v The Paul Revere Life Insurance
     Company, et al.*
     Civil Action No.: WMN 02-781

Dear Mr. Yarmis:

I write in response to your two letters of July 15, 2003 regarding the standard instructions and definitions and regarding the 12-hour limitation for the taking of depositions.

Plaintiffs referenced the standard instructions and definitions as a courtesy to you in preparing responses to our written discovery. I disagree with your claim that Defendants would be in any way prejudiced by our subsequent reference to the standard instructions and definitions. Ultimately, the issue may be meaningless. However, if Defendants object and fail to respond to any of the written discovery on grounds of lack of clarity and if clarity would have been provided by these standard instructions and definitions, which you are apparently deliberately ignoring, then I will in all likelihood have to bring the matter to the attention of the Court.

As to healthcare providers, I believe that we can at least agree that they are the quintessential hybrid witnesses. Please understand that Plaintiffs reserve the right to elicit expert testimony from any and all pure expert and/or hybrid fact/expert witnesses designated by Plaintiffs or any other party to this case, as well as any other persons, whom Plaintiffs may be able to call as expert witnesses, pursuant to the Federal Rules or otherwise, without an explicit designation. Accordingly, you should presume that each and every healthcare provider listed may be called in Plaintiffs' case-in-chief for the purposes of providing expert testimony to the jury in his or her field of expertise.

Plaintiffs nevertheless take the position, first set forth in Defendants' correspondence, that the 12-hour limitation applies to the healthcare providers and any other hybrid fact/expert

William H. Owens
whowens@owens-smouse.com
www.owens-smouse.com

113 OLD PADONIA ROAD • SUITE 100
HUNT VALLEY, MARYLAND 21030
TELEPHONE: 410-453-5757
FAX: 410-453-5755

EXHIBIT
9

Derek B. Yarmis, Esquire
July 17, 2003
Page 2 of 2


witness.  While Plaintiffs are likewise anxious to avoid burdening the Court with a discovery motion, we cannot agree to exempting the healthcare providers from the 12-hour limitation.  If for some reason you believe it would be more appropriate for us to file a Motion for Protective Order, then please write to us stating your reasons for same.  Otherwise, we will presume that you will take whatever action, or file whatever motion, you deem appropriate.

      I thank you for your attention to this matter, and I remain


           Very truly yours,


           WILLIAM H. OWENS


WHO:rcc
Copy to:    Bryan D. Bolton, Esquire, By Way of U.S. Mail and Fax
          Robert O. Locastro, By Way of U.S. Mail and Fax

## LIMITING DEPOSITION HOURS - ITS METHOD AND RATIONALE

Several years ago many of us on the Federal District Court of Maryland began to include in our scheduling orders a provision limiting the number of deposition hours of fact witnesses. Our obvious purpose has been to reduce the costs of discovery. The members of our bar appear to have accepted the practice, and it seems to be working quite well. Although I have no desire to proselytize, I have concluded that it might be worthwhile to share our approach with a broader audience since our experience has been favorable.

Let me start by simply stating the formula we use as the base line for initially determining the appropriate number of deposition hours. (Please do not be alarmed; disclaimers will follow). The formula is this: one hour of fact depositions per side for every $10,000 in controversy. Experience predated the formula. I derived the latter from a review of various orders I had entered limiting deposition hours. After the formula had emerged from the data, I asked myself if there was any rationale for it. I found that there was.

My starting point was to determine what, from a public policy perspective, might be considered an acceptable level of the aggregate transactional costs, i.e., the costs to both sides, for dispute resolution. I chose the figure of 25% of the amount in controversy. Perhaps this percentage is too low, perhaps some would say it is too high. I suggest, however, that whether the proper figure is 20%, 33%, or 40%, the figure I have selected is in the ballpark. If the cost of resolving disputes in court becomes too high, <u>Jardyce v. Jardyce</u> -- Dickens' fictional testamentary proceeding in <u>Bleak House</u> that ended only with the exhaustion of the estate's assets -- passes from satire to reality.

Let me be clear that what I am talking about is the appropriate level of transactional costs as viewed from a policy perspective outside the litigation. Within the litigation, it is up to the

EXHIBIT
10

clients to determine what the worth of their lawyers' work is to them.  Given the legitimate economic realities of law practice, contingency fees in an amount  greater than 25% for one side alone are warranted in some cases.  However, independent public policy interests require that external restraints be placed upon the scope of the litigation process.  One side should not be permitted to escalate litigation costs to such an extent that her opponent can no longer continue the fight.  Moreover, widespread perception that litigation is so expensive that only the wealthy can afford it erodes public confidence in the legal system and discourages resort to the courts for the resolution of disputes.

After choosing 25% as the appropriate level of aggregate transactional costs, I made three other assumptions in deriving my formula: (1) an hourly attorney's fee of $150, (2) only two disputants, and (3) only one attorney per side.  If these assumptions are made, application of the formula of one hour of fact depositions per side for every $10,000 in dispute has the following arithmetical effects:

| Amount in Controversy | Deposition Hours | | Dep. Fees | Appropriate Transactional Costs | % of Dep. Fees/ TransCosts |
|---|---|---|---|---|---|
| | Per Side | Total | | | |
| $    50,000 | 5 | 10 | $  3,000 | $  12,500 | 24% |
| $   100,000 | 10 | 20 | $  6,000 | $  25,000 | 24% |
| $   250,000 | 25 | 50 | $15,000 | $  62,500 | 24% |
| $   500,000 | 50 | 100 | $30,000 | $125,000 | 24% |
| $1,000,000 | 100 | 200 | $60,000 | $250,000 | 24% |

In this chart the figures in the column "appropriate transactional costs" are calculated by multiplying the amount in controversy by 25%, e.g., 25% x $50,000 = $12,500. The figures in

2

the column "dep[osition] fees" are calculated by multiplying the total number of deposition hours by $300 (the aggregate transactional cost of having two attorneys charging $150 per hour at the deposition). These fees do not include the cost of deposition transcripts. Nor do they include the far more substantial cost of preparing for the deposition. Any experienced trial lawyer worth his salt knows that whether he is taking the deposition or representing a person whose deposition is being taken, he should spend as much time in preparation as in the deposition itself.

The last column in the chart reflects that if the parties in fact each take one hour of depositions of fact witnesses for every $10,000 in controversy, 24% of the assumed appropriate level of transactional costs is expended as lawyers' fees at the depositions. This figure does not seem at all unreasonable (or, at least, does not seem unreasonably low), particularly in light of the additional transcript and preparation costs just mentioned. Moreover, the limit applies only to fact witnesses. Although Fed. R. Civ. P. 26(b)(4)(C) -- which imposes the cost of expert fees upon the party taking an expert's deposition -- provides an incentive for counsel to conduct such a deposition efficiently, expert depositions constitute another costly aspect of the discovery process.

My assumptions are, of course, subject to debate. The $150 per hour fee I have posited may be too high or too low in different locales or in different types of cases. The assumptions of "one party per side" and "one attorney per party" may be simplistic but, if anything, they are conservative. Most importantly, as indicated above, reasonable people can disagree as to what is an appropriate level of aggregate transactional costs for dispute resolution. However, the assumptions do establish parameters for analysis and discussion.

3

Now is the time for disclaimers. I do not believe in rigid codes. However symmetrical a chart or graph may seem, the life of the law is too fluid to constrain in narrow categories. Reason must prevail over rationality. My colleagues and I realize that lawyers know their cases far better than we do, and we permit lawyers to have input in the decision-making process. Although in most cases we enter our initial scheduling orders before meeting with counsel, the pertinent provision of our form order provides as follows:

> Please confer with one another and report to me within 14 days of the date of this order concerning the number of hours of depositions which you believe is appropriate. If I have not heard from you by that date, each side should be limited to [ ] hours of depositions of fact witnesses (including parties). If you agree to another number of deposition hours and notify me of your agreement, you may consider your agreement approved unless you hear from me to the contrary within ten days.

If counsel agree that the number of deposition hours should be different from that which we have set, and their requested modification is reasonable, we grant the request without further ado. If they are in disagreement or if their request seems to be excessive, we will immediately speak to them about it by conference call. Sometimes it is clear that counsel have not thought through the cost implications of the deposition hours they have requested, and we explain to them the reasons for the limits we have set. However, at other times counsel persuade us that the case is one that varies from the norm. Factors we consider in that regard include the nature of the claim, whether the ad damnum clause in the complaint appears realistic, the number of potential witnesses, the scope of knowledge of potential witnesses, the importance and value of non-monetary aspects of the case, the number of parties per side, and conflicting interests among parties on the same side. For example, there frequently is a limited universe of fact witnesses in a routine motor tort case. Therefore, if the claim in such a case is $100,000, I will set a limit of

4

eight hours rather than ten hours. On the other hand, I recognize that employment disputes usually require greater discovery. Therefore, if the claim in such a case is $100,000, I set a limit of twelve to fifteen hours instead of ten hours.

One final benefit of limiting deposition hours may be worthy of mention. We provide in our scheduling orders that "any colloquy engaged in by counsel shall be counted against his/her client's deposition time." This provision helps to stop abusive practices engaged in by counsel who, during the course of a deposition, bully their opponents or interpose speaking objections. Such conduct violates the Discovery Guidelines our court has adopted. However, judges do not have time to preside over depositions to enforce the guidelines, and anyone who has ever practiced law knows that responsible counsel are disinclined to interrupt a judge's schedule over a discovery dispute. However much we may try, we cannot change human nature by rule or regulation, and it is a fallacy of the legal mind to believe that people who are not otherwise inclined to do so can be compelled to act courteously and responsibly simply by writing and refining codes of conduct. A system of incentives and disincentives is necessary to influence human behavior. Under the practice we follow, counsel are confronted with a choice: they may try to disrupt an adversary's examination of a witness on deposition by improper interjections, but, if they do so, they simply will be decreasing the amount of time they can expend in asking deposition questions of their own.

In conclusion, let me say that when I first began to limit the number of deposition hours, I was surprised by what seemed to me the relatively low number of hours my approach yielded. During the intervening years I have discussed my formula both with individual lawyers and with various bar groups and invited them to tell me if there is a flaw in my reasoning. They have not

5

done so. I recognize that this may be out of respect for (or fear of) my position as a judge. Nevertheless, I am increasingly persuaded that the practice my colleagues and I are following is appropriate and, together with limits on interrogatories and other written discovery, is an effective means to control the cost of litigation. We should remember that the 1939 amendments to the Federal Rules which ushered in the era of discovery were written by true trial lawyers who were accustomed to getting to the point quickly when examining witnesses since they usually were doing so in the courtroom. Several generations (including my own) of what I might call "discovery lawyers" have been bred since then. We were trained from our earliest days at the bar to imitate Captain Ahab, finding the whale (or the minnow) in the sea of discovery that might win our case. Although our voyage was sometimes fruitful, more often than not we returned without a catch. Economics -- and the realization that justice the parties cannot afford is not justice at all -- requires us to take a more balanced view and use in moderation the discovery tools our predecessors wisely handed to us.

J. Frederick Motz
5/14/98

6